# Exhibit 1

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| BRENDA CAMPBELL, ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> EXPERIAN INFORMATION SOLUTIONS, INC., ET ) <br> AL.; ) <br> ) <br> Defendant. ) <br> ) <br> ) | Civil Action – 08-04217-CV-C-NKL |

## DECLARATION OF DAVID BROWNE

I, David Browne, declare and state as follows:

1. Since September 1996, I have been employed as a compliance manager for Experian Information Solutions, Inc. Prior to that time, I held the same position with Experian's predecessor, TRW, in its Information Services division. I joined TRW as a systems analyst in January 1977.

2. Based on my experience at Experian, I am very familiar with Experian's policies and procedures for the compilation, retention, reinvestigation and disclosure of credit information. The facts set forth herein are based upon my personal knowledge, and if I were called upon to testify to them, I could and would competently do so.

### ADMINISTRATIVE AND LONG ADMINISTRATIVE REPORTS.

3. It is my understanding that Experian has already produced two Administrative Reports ("Admin Reports") for Plaintiff dated October 1, 2008 (EXP-BFC-0339 through 0371) and October 17, 2008 (EXP-BFC-0373 through 0402), pursuant to the original protective order

in this case, and one Long Administrative Report ("Long Admin") dated May 26, 2009 (EXP-BFC-1473-1524) pursuant the modified protective order in this case.

4. Admin Reports are proprietary documents generated by Experian specific to a particular consumer. Among other things, the Admin Report contains any name variations, social security numbers, addresses, and credit accounts appearing in a consumer's file on the date the Admin Report was created. For example, by reviewing the produced Admin Reports, Plaintiff can determine that her Union Planters National Bank account ending in XXXX730 was recorded by Experian with the name "Brenda F Campbell," with Plaintiff's exact social security number, and a Jefferson City, Missouri, address. Accordingly, Plaintiff's Admin Reports are documents that can assist in determining whether a mixed file existed.

5. Plaintiff's Admin Reports identify a specific personal identification number ("PIN") assigned to Ms. Campbell. Specifically, both of Plaintiff's Admin Reports reflect that Plaintiff has been assigned the PIN ending in XXXXXX6527.

6. Plaintiff's Admin Reports are not part of the credit reports Experian provides to third parties, nor are they part of the file disclosures Experian provides to consumers. Admin Reports are not created in the normal course of business, but are generated from Experian's computer system for a specific consumer in rare instances such as legal proceedings when they are used for research purposes. Only a very limited number of trained Experian employees may generate an Admin Report.

7. Like the Admin Reports, referred to above, the Long Admin is specific to Plaintiff. It includes a coded depiction of Plaintiff's identifying and credit information as it currently exists in Experian's consumer credit database. Plaintiff's Long Admin was produced pursuant to a court order.

8. The Long Admin (1) does not contain more complete data regarding the identifying segments (name, address, social security number, etc.) than the Admin Report; (2) does not provide historical identification information reported for a particular account; (3) does not contain information regarding how the identification information associated with a particular account changed over time; (4) does not explain how false information may have come into Plaintiff's file; (5) does not describe Experian's procedures; and (6) does not enable an attorney or litigant to track and recount the full history of a consumer's Experian file.

9. Just like the Admin Reports, the Long Admin is not part of the credit reports provided to third parties, is not part of the file disclosures sent to Plaintiff, and is not generated in the ordinary course of Experian's business.

## THE "LOOSE MATCH" ADMIN

10. As described above, both Admin Reports and Long Admins are reports that can be generated and printed in document form. That is not true for a "Loose Match Admin" ("Loose Match").

11. The term "Loose Match Admin" is a misnomer. It does not refer to a type of report or document than can be generated, but instead is the name of a computer search function at Experian that is more commonly known as a "Scan Search." It is designed to locate the records (PINs) of different consumers who have certain similarities in their identifying characteristics.

12. Because Loose Match (Scan Search) is purely a search function and not a report or a document, no actual "Loose Match Admin" report exists. Given that no such report currently exists, nor can one be generated, it is not possible for such a "Loose Match Admin" report to be produced in discovery.

13.     The "Loose Match" search (Scan Search) is designed to be used with varying but limited elements of a consumer's identifiers. The purpose is to permit the records (PINs) to be located of all consumers whose identifiers meet the characteristics that are being sought. These identifiers will typically include some of the following: last name, first name, social security number, current address, previous address, birth date, spouse information, etc. The number of different consumer records (PINs) located will depend on factors such as the amount of identifying information provided when the "Loose Match" search (Scan Search) is requested.

14.     The results of a "Loose Match" (Scan Search) are displayed as a string of records, one after another, segregated by PIN. Each of the consumer records (PINs) located in response to a "Loose Match" search (Scan Search) is an *identical copy* of the corresponding Admin Report that would have been generated by Experian using its more traditional Admin Report inquiry.

15.     If a "Loose Match" search (Scan Search) identified Plaintiff's file (PIN) during its search and if that PIN were to be printed out, the resulting document would be a complete and identical copy of Plaintiff's Admin Report (two copies of which have already been produced). It would not include any other information that was present on any of the other PINs located by the "Loose Match" search.  <u>Thus, no additional information pertaining to the Plaintiff would be included in an Admin Report generated for the Plaintiff as a result of a "Loose Match" (Scan Search) process beyond that which was included in Plaintiff's previously produced Admin Reports.</u>

16.     A "Loose Match" search (Scan Search) that identified Plaintiff might also return PINs for other consumers whose identifiers met the criteria chosen for a particular "Loose Match" search (Scan Search). For example, this might include multiple consumers who bear the

4

name "Brenda Campbell." If each of the different Brenda Campbells had their individual PINs printed out, the resulting Admin Reports would contain only the information that pertained to that corresponding Brenda Campbell. In other words, the information within the PIN belonging to each Brenda Campbell, including that of Plaintiff, would remain completely intact and be totally segregated from each other.

17. Depending on the type of research being performed, multiple "Loose Match" searches (Scan Searches) might be performed using different elements of a consumer's actual identification. The number of PINs returned as a result of these searches could be very different depending on how refined the search was in terms of the amount of identifying information used to initiate each search.

18. If an Experian employee was trying to ascertain how a consumer's report had become mixed with that of a different consumer, he/she would look at an Admin Report. He/she would not conduct a "Loose Match" search (Scan Search). A "Loose Match" search (Scan Search) would not contain any information that would assist in determining how the consumer in question came to have their file mixed with that of a different individual.

19. The "Loose Match" search (Scan Search) has no relevance to mixed file cases because the "Loose Match" (Scan Search) process is wholly distinct from the automated systems that assemble a consumer's credit file for delivery to a creditor or for disclosure to a consumer, or that generate Admin Reports and Long Admin reports. Thus the "Loose Match" search (Scan Search) is not associated with any credit reporting activity undertaken by Experian. "Loose Match" searches (Scan Searches) are not used in the creation of consumer credit histories or in the updating of consumer credit histories. "Loose Match" searches (Scan Searches) are not used in connection with any credit report Experian provides to third parties or the credit disclosures

Experian provides to a consumer. "Loose Match" searches (Scan Searches) provide no insight into how a consumer's credit history was created, transmitted, or how a particular credit history changed over time. Further, "Loose Match" searches (Scan Search) are not used in conjunction with any entity's credit granting decisions.

This declaration is executed under penalty of perjury, pursuant to 28 U.S.C. § 1746, on _May 28_, 2009 in Costa Mesa, California.

David Browne