IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| BRENDA FAITH CAMPBELL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08-4217-CV-C-NKL |
| | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**O R D E R**

Pending before the Court is Defendant Experian Information Solutions, Inc.'s Motion for Summary Judgment [Doc. # 67]. Experian moves for summary judgment with respect to all of Plaintiff's claims; Plaintiff opposes this motion. For the reasons stated below, the Court grants summary judgment in part and denies summary judgment in part.

**I.    Factual Background**

Plaintiff filed this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* ("FCRA"), against Experian and two other credit reporting agencies,[1] alleging Experian was wholly or in part responsible for her credit file being mixed with the credit record of a "Brenda Faye Campbell" from Willard, Missouri.

---

[1]Defendant Equifax settled with Plaintiff and was dismissed from this suit on September 3, 2009 [Doc. # 108]. Defendant Trans Union was voluntarily dismissed from this suit without prejudice on September 8, 2009 [Doc. # 109], and was added as a party to Plaintiff's second suit, No. 09-4041-CV-C-NKL.

1

Plaintiff alleges the first evidence of the problem occurred in August 2005 when Midland Credit Management began reporting a derogatory collection account on Plaintiff's record. It is undisputed that the Midland collection account did not belong to Plaintiff, but rather, was improperly associated with Plaintiff's Social Security number by one or more of the credit reporting agencies. Plaintiff specifically alleges Experian failed to follow reasonable procedures to ensure the accuracy of her credit file and that Experian then failed to reasonably reinvestigate her file once she informed Experian her file contained errors. *See* 15 U.S.C. §§ 1681e(b), 1681i(a). Plaintiff alleges that as a result of her credit file being mixed with the credit file of another person and not corrected, she suffered financial loss, expenditure of time and resources, and humiliation.

### A. Plaintiff's November 2006 On-Line Investigation Requests[2]

Plaintiff requested a free copy of her credit file from Experian on November 18, 2006. After reviewing her credit report, Plaintiff discovered numerous items of false information and initiated an online dispute with Experian on November 26, 2006, to correct the misinformation.

Plaintiff had never seen her Experian credit report or disputed any information with Experian prior to November 2006. Experian asserts that on that date Plaintiff only reported one dispute involving eight items of information appearing in Plaintiff's credit file. Plaintiff maintains she initiated a dispute as to all items that did not belong in her credit file, which totaled more than eight items. On November 27, 2006, Experian

---

[2]The facts are viewed in the light most favorable to Plaintiff, the non-movant.

conducted an investigation of eight disputed items and made the changes Plaintiff requested as to those items. Experian then sent an email to Plaintiff confirming the results of the investigation. Plaintiff states in her deposition she logged a second online dispute with Experian on November 30, 2006. Experian claims to have no record of this second dispute.

On December 28, 2006, Plaintiff emailed Customer Service at Creditexpert.com. In the email, Plaintiff indicated she had disputed her credit report on November 30, 2006, and had not received a reply. Creditexpert.com belongs to Consumerinfo.com, Inc., which is a wholly owned subsidiary of Experian's parent corporation, Experian Holdings, Inc. A Creditexpert.com Customer Care Representative responded to Plaintiff's email the same day informing Plaintiff that Creditexpert.com was not responsible for the content of Plaintiff's credit report and that Plaintiff should contact Experian directly.

### B. Plaintiff's Disputes in 2007 and 2008

It is undisputed that after the November 2006 initial dispute and until this suit was filed in October 2008, Plaintiff's credit file was inaccurate. In an effort to resolve these inaccuracies, Plaintiff drafted and mailed four dispute letters addressed to Experian, Attn: Customer Care at a P.O. Box address in Irvine, California, between April 2007 and April 2008. The Irvine P.O. Box belongs to ConsumerInfo.com, which operates the website CreditExpert.com. Plaintiff sent her dispute letters to that address via certified mail, return receipt requested, and received signed receipts in response indicating that the mail was delivered and signed for as addressed. Plaintiff does not recall how she obtained the

3

Irvine, California, address, but believes it came from a website or communication from Experian. Experian denies this is possible and insists any communication Experian sent to Plaintiff directed her to mail disputes to their corporate address in Allen, Texas.

After Plaintiff mailed her fourth dispute letter, on April 22, 2008, she received a letter from ConsumerInfo.com stating "we recently received your request to dispute information on your credit report that you feel is inaccurate. Unfortunately you sent this dispute information to us in error. ConsumerInfo.com, Inc., and Experian Consumer Direct are not credit reporting agencies; therefore, we are unable to complete your request." The letter also stated "please be aware that for your protection we destroyed the dispute information that you submitted to us." Plaintiff understood this to mean that her fourth letter had not been forwarded to Experian.

Plaintiff also claims that Experian had notice of the errors in her file because Experian received electronic notices of the complaints Plaintiff filed with Equifax and Trans Union throughout 2007 and 2008. Experian, Equifax and Trans Union share investigation results and alert information through an electronic system. When each credit reporting agency receives notice of a consumer dispute, they notify the other two agencies not only of the dispute but also of any investigation they conduct regarding the disputed information. Between May 2007 and October 2007, Experian received four notifications from Equifax and Trans Union which identified Plaintiff's disputes regarding the account at Midland Credit Management.

If Experian receives an investigation result from either Equifax or Trans Union

indicating that a particular piece of information in dispute should be deleted from Experian's credit file for a consumer, Experian will delete the information; however, if the electronic report indicates that either Equifax or Trans Union updated or altered the information in the consumer's report, then Experian will take no action concerning the disputed information until the consumer contacts Experian directly. The first three notifications Experian received alerted Experian that Trans Union and Equifax had investigated Plaintiff's disputed information regarding the Midland account; Experian took no action regarding Plaintiff's file at that time. The last notification came from Midland and directed Experian to delete the disputed account which they promptly did.

As of October 2008, Experian's internal records of Plaintiff's credit information contained four Social Security number variations, 26 name variations, and 39 address variations. Sometime between October 1, 2008 and October 17, 2008, Experian identified and corrected these errors in Plaintiff's file.

## II.     **Summary Judgment Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating there is no genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that

5

designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When considering a motion for summary judgment, the Court must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby, Inc.*, 477 U.S. at 248.

### III. Discussion

#### A. Experian's Reinvestigation of Plaintiff's Disputes, § 1681i(a)

##### 1. November 26, 2006, Disputes

The FCRA provides that

> "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly [...] of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate [. . . ]."

15 U.S.C. § 1681i(a)(1)(A).

The parties agree that Plaintiff initially filed a dispute with Experian on November 26, 2006. Experian asserts Plaintiff disputed eight pieces of information in her credit report at that time and that Experian made every change Plaintiff requested. [Doc. # 69, ¶¶ 45-52]. Plaintiff claims she disputed all items that did not belong to her, and that her disputed information included more than eight items [Doc. # 81, ¶ 45].

6

In *Murphy v. Midland Credit Management, Inc.,* a consumer disputed ownership of an account listed in her credit report. 456 F. Supp. 2d 1082 (E.D. Mo. 2006). The credit reporting agency verified the consumer's identification with the account holder and refused to remove the disputed account from consumer's file. Even though a reinvestigation took place, the district court denied defendant's motion for summary judgment. The court determined that because defendant knew of the confusion regarding the disputed account in the consumer's file there was a factual dispute regarding whether defendant's limited investigation was reasonable. Similarly, Plaintiff filed a dispute and Experian investigated Plaintiff's file. The issue here, as in *Murphy,* is whether Defendant's investigation was reasonable in light of the content of Plaintiff's file, the disputes identified by the Plaintiff and Experian's reinvestigation. While Experian claims that it investigated and corrected all information disputed by Plaintiff, Plaintiff testified that she reported more problems than were corrected by Experian. Therefore, at a minimum, there is a material dispute of fact regarding what information Plaintiff challenged in her November 26, 2006 dispute. There is also a dispute about whether Plaintiff filed a second dispute with Experian on November 30, 2006, and whether Experian took appropriate action. In addition, a reasonable trier of fact could conclude that the existence of substantial and obvious errors in Plaintiff's credit file after November 2006, demonstrate that Experian's reinvestigation was not reasonable. Summary judgment is, therefore, denied on this matter.

### 2. **Disputes After November 2006**

7

Plaintiff argues that there is a genuine issue of material fact regarding whether Experian had notice of Plaintiff's additional disputes after November 2006. Plaintiff maintains that she lodged at least four different disputes through an address she found on a website connected to Experian. Experian asserts the address and website Plaintiff used does not belong to Experian and that it had no notice of these disputes because Plaintiff's letters were mailed to an incorrect address. The parties agree that Plaintiff's four letters were sent to an address that does not belong to Experian.

The statute requires Plaintiff to notify Experian directly of any dispute. 15 U.S.C. § 1681i(a). While Plaintiff believed she was sending her letters to Experian, it is now undisputed that they were sent to Experian's "sister" corporation. Under these circumstances, no reasonable juror could find that Experian received notice of these disputes. In fact, the one response Plaintiff received regarding those letters indicated that Plaintiff's dispute had been destroyed to protect Plaintiff's personal information and the information was not forwarded to Experian; nor has Plaintiff presented any authority that Experian's sister corporation should be deemed its alter ego for purpose of notification.

Plaintiff also argues that Experian deliberately dodged Plaintiff's written disputes as a way to avoid an investigation, but never specifically provides facts or evidence demonstrating this. As such, there are no genuine issues of material fact remaining regarding whether Experian had notice of Plaintiff's additional disputes. Because Plaintiff has failed to demonstrate she notified Experian of these disputes, this aspect of her claim fails as a matter of law.

## B. Experian's Procedures to Ensure Maximum Possible Accuracy of Information in Plaintiff's Credit Report, § 1681e(b)

A credit reporting agency is required to "follow reasonable procedures to assure maximum possible accuracy**"** of information contained in a consumer credit report by relying on its automated system that did not have the capability of sending an alert when such obvious evidence of a mixed file was present, Experian could be found by a reasonable juror to have been reckless. To establish a *prima facie* case of a violation of § 1681e(b), Plaintiff must demonstrate 1) there was inaccurate information in plaintiff's consumer credit report; 2) the inaccuracy is due to defendant's failure to follow reasonable procedures to ensure maximum accuracy; 3) plaintiff suffered injury; and 4) plaintiff's injury was caused by the inclusion of the inaccurate entry. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996). Courts have emphatically held that the FCRA does not impose strict liability on credit reporting agencies. *Hauser v. Equifax, Inc*., 602 F.2d 811, 814 (8th Cir. 1979). Therefore, "to survive a motion for summary judgment, a plaintiff must do more than allege that a report contained inaccuracies or that a defendant relied on inaccurate sources when compiling their reports. The plaintiff must offer specific facts that could allow a reasonable-fact-finder to determine that defendant's procedures were not reasonable." *Olwell v. Med. Info. Bureau*, No. 01-1481, 2003 WL 79035, at *3 (D. Minn. Jan. 7, 2003) (internal citations omitted). "The determination of the 'reasonableness' of the defendant's procedures [. . .] is treated as a factual question [. . .]. It therefore cannot be resolved on summary judgment unless the reasonable or unreasonableness of the

9

procedures is beyond question." *Crabill v. Trans Union, LLC*, 259 F.3d 662, 664 (7th Cir. 2001). The statute provides that anyone who negligently fails to comply with any provision of the FCRA is liable for "an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; and in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees." 15 U.S.C. § 1681o.

Plaintiff argues that because Experian received notification of her disputes with Equifax and Trans Union, Experian should have known this disputed information was also within Plaintiff's Experian credit file. Therefore, Experian's failure to take action to correct the errors in her credit file after receiving these notifications demonstrates Experian's failure to follow reasonable procedures to ensure the accuracy of her information. Plaintiff states that Experian's failure to follow reasonable procedures resulted in actual damages from her applications for credit in 2005, 2007 and 2008 and in out-of-pocket expenses accrued trying to correct her credit report. Plaintiff also claims emotional distress.

Experian asserts that because the Plaintiff cannot show any action by Experian that caused her injury, her claim under 15 U.S.C. § 1681e(b) must fail.

### 1. 2007 Home Refinance

In June 2007, Plaintiff and her husband applied for a "cash out" refinance with Central Bank of Jefferson City, Missouri, to combine their first and second mortgages. During the underwriting process, Central Bank reviewed a "tri-merge" consumer report

generated by Accudata containing credit information for Plaintiff and her husband. The Accudata report included a notation indicating that Experian provided Accudata with information regarding the derogatory Midland collection account. Central Bank originally could not approve the loan because of the Midland collection account and corresponding public record judgment. Plaintiff's efforts to establish that the information did not actually belong to her were sufficient to convince the bank to override the standard guidelines and allow the loan to go through as requested. Central Bank approved and closed on the cash-out refinance in July 2007 at the same terms for which Plaintiff and her husband applied.

Plaintiff argues she should be able to recover damages for the 2007 home refinance, even though she ultimately was approved, because failure to comply with § 1681e(b) is actionable even absent a denial of credit. *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329 (9th Cir. 1995).

Plaintiff has met her burden of producing enough evidence to support a reasonable jury verdict in her favor on this issue. That is, Plaintiff has demonstrated the causal connection between an arguable violation of the statute and "the loss of credit or some other harm." *Crabill*, 259 F.3d at 664. A reasonable fact finder could conclude that Plaintiff's delay in receiving her home loan and the extra effort she extended in seeking the loan, as well as any emotional distress that resulted from those efforts constituted "some other harm".

### 2. Plaintiff's Alleged Emotional Distress

The FCRA provides for "damages for humiliation, mental distress or injury to

11

reputation and creditworthiness, even if Plaintiff has suffered no out-of-pocket losses." *Cousin v. Trans Union Corp.*, 246 F.3d 359, 369, n. 15 (5th Cir. 2001); *see also Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 834-35 (8th Cir. 1976). A plaintiff must demonstrate a "genuine injury" to recover an award for emotional distress. *Carey v. Piphus*, 435 U.S. 247, 264 n. 20 (1978). Acceptable evidence of a genuine injury includes witness corroboration of any outward manifestation of emotional distress. *Forshee v. Waterloo Indus.*, 178 F.3d 527, 531 (8th Cir. 1999). The Eighth Circuit has not ruled on the standard to be applied to emotional distress damages in a case brought under the FCRA. Other courts have, however, applied the genuine injury test to FCRA claims. *See Cousin,* 246 F.3d at 371; *Murphy*, 456 F.Supp.2d at 1093.

In *Fahey v. Experian Info. Solutions, Inc.*, 571 F. Supp. 2d 1082 (E.D. Mo. 2008) the court allowed plaintiff to recover emotional distress damages where plaintiff asserted "he suffered depression and irritability, became uncharacteristically withdrawn, and suffered physical ailments" as a result of defendant's reporting inaccurate information about him. Plaintiff supported his allegations with an affidavit from a friend who stated "plaintiff became and remained depressed and withdrawn, refused to leave his mobile home to socialize, and appeared like a 'broken man' with no motivation to do anything." *Id*.

Plaintiff claims she feels violated, devastated, and drained because of the complete loss of control over her own name. Plaintiff also asserts that she has feelings of guilt and responsibility because she believes her family has been burdened by her credit concerns.

12

Plaintiff's husband has observed a change in her sleep habits during her dispute with the credit reporting agencies. He has seen Plaintiff crying and has witnessed her frustration. Plaintiff's husband believes she suffers from depression as a result of what has transpired since November 2006. The Court determines this is sufficient evidence of a genuine injury to survive a motion for summary judgment.

Plaintiff attributes her emotional distress to Experian, Equifax, and Trans Union and does not parse out which aspect of emotional distress was caused only by Experian. Plaintiff instead argues that she can obtain recovery from any defendant based on joint and several liability. Experian argues that Plaintiff must identify particular injuries and describe how Experian caused those injuries. *Konter v. CSC Credit Servs.*, *Inc.*, 606 F. Supp. 2d 960, 969 (W.D. Wis. 2009) ("It is unclear from the evidence whether [plaintiff] is referring to problems for which defendant is responsible or credit problems with other credit reporting agencies originally named in his complaint.").

Experian has failed to convince the Court that the common-law rule of joint and several liability should not apply in this action. *See The Atlas*, 93 U.S. 302 (1876). Other circuits have recognized that general principles of tort liability apply to the FCRA. *See Reynolds v. Hartford Fin. Serv. Group, Inc.*, 435 F.3d 1081 (9th Cir. 2006) (determining that joint and several liability under the FCRA furthers the statute's consumer protection goals) *overruled on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007). If the Court were to rule otherwise, it would be virtually impossible to recover damages when multiple credit reporting agencies were violating the FCRA in similar ways at the

same time. That interpretation would be inconsistent with the remedial purpose of the statute. Therefore, Plaintiff is not required to allocate her emotional damages between the various credit reporting agencies. Summary judgment is denied with regard to Plaintiff's emotional distress damages which were caused by Experian or which Experian contributed to cause.

### 3. Out-of-Pocket Costs & Time Lost

Plaintiff seeks damages for miscellaneous out-of-pocket expenses for postage fees, credit monitoring, printing and copying costs, and mileage expended in disputing the errors in her credit report. Plaintiff also seeks compensation for the time spent reviewing credit reports, researching those reports, making phone calls, lodging disputes, and sending letters and faxes. Plaintiff estimates the economic value of her time spent at $47,648.00.

Experian argues that these expenses are not compensable under the FCRA. *See Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2d Cir. 1995) (A party's "expenses incurred merely to notify [a credit reporting agency] of inaccurate credit information cannot be compensable as 'actual damages' for a violation of the FCRA."); *Reed v. Experian Info. Solutions, Inc.*, 321 F. Supp. 2d 1109, 1115 (D. Minn. 2004) (explaining that letters notifying credit reporting agencies of dispute are not expenses incurred in enforcing statute).

Plaintiff has not explained how these reports to Experian were anything other than what the Plaintiff was required by law to do. Therefore, the Court finds that these costs

14

cannot be recovered as damages. Experian's Motion for Summary Judgment with regard to Plaintiff's out-of-pocket costs and time lost is granted.

### 4. The 2007 Writ of Sequestration & Identity Theft by Brenda Faye Campbell

Plaintiff also claims that Experian is responsible for actual damages stemming from Brenda Faye Campbell's identity theft. Plaintiff's Social Security Number was included on various forms filed by Kramer & Frank, P.C., in the Circuit Court of Green County, Missouri, in 2006 and 2007. The Circuit Court then included Plaintiff's Social Security Number in two Writs of Execution served on Brenda Faye Campbell of Williard, Missouri, in December 2006, and in another served on Brenda Faye Campbell in May 2007. In *Campbell II,* Plaintiff alleges Brenda Faye Campbell then used this information to open an account with Washington Mutual.

Plaintiff also claims emotional distress damages stemming from her receipt of a Writ of Sequestration. Plaintiff was served the Writ by the Cole County Sheriff in May 2007. Kramer & Frank, as attorneys for Midland Credit Management, Inc., requested the writ in an attempt to garnish Plaintiff's wages based on their mistaken belief that Plaintiff was delinquent on an account. Plaintiff's wages were never garnished and a Release of Execution and Garnishment was entered on May 23, 2007.

Plaintiff has failed to bring forth any evidence demonstrating the possibility that Experian could be responsible for providing her credit information to any of the Midland Defendants. As such, she's failed to refute Experian's assertion that there are no genuine

15

issues of material fact for trial on this issue; summary judgment with regard to these damages is granted.

### 5. Plaintiff's Lost Credit Opportunities

Plaintiff states she fears applying for credit because her credit report suggests she has credit problems. Because of concern as to what may be in her credit report, Plaintiff claims she has missed out on other credit opportunities. Plaintiff also seeks damages for a loss in credit expectancy (her ability to borrow sums of money in her own name). Plaintiff has valued these damages at $18,419.00.

In *Casella*, plaintiff claimed damages for a loss of opportunity to participate in the home loan mortgage market. 56 F.3d at 475. The court determined that in the absence of evidence that plaintiff applied for a home loan and was denied, or received less favorable terms because of plaintiff's credit report, the damages plaintiff requested were too speculative. *Id*.

Similarly, the Court finds Plaintiff's loss in credit expectancy damages are not allowed as a matter of law because on this record they are too speculative. Summary judgment is granted to Experian on Plaintiff's requested damages for a loss in credit expectancy.

### 6. The Discover Card Denial, the Auto Loan, and the 2008 Home Equity Loan

Prior to August 2005, Plaintiff had never been denied credit or had any problems or disputes concerning any credit reporting agency's credit reports. In 2005, Plaintiff applied

for a Discover Card and Plaintiff received a denial letter from Discover Bank, the issuer of Discover Card, on August 31, 2005. The parties do not dispute that the information relied on in denying Plaintiff's request for a Discover card came from Equifax, not Experian.

Plaintiff received an auto loan to finance the purchase of a vehicle from a dealership in November 2005. Plaintiff does not know if she obtained the auto loan at a higher interest rate than she would otherwise have received as a result of any information appearing in any of her credit reports. Plaintiff was told by the individual processing the auto loan that there was a judgment on her credit file; however, Plaintiff cannot identify the credit reporting agency that supplied a consumer report in connection with the auto loan.

In 2008, Plaintiff and her husband applied for a home equity line of Credit at Central Bank in Jefferson City, Missouri. During the loan approval process, Central Bank requested Plaintiff's credit report. Central Bank was unable to obtain Plaintiff's credit report because Plaintiff's credit information was frozen. Plaintiff's credit was frozen due to the fraud alert she requested. Because Central Bank could not receive Plaintiff's credit information, they only relied on her husband's credit score in evaluating the loan. Based on Plaintiff's husband's credit information Central Bank approved the loan at the interest rate he applied for.

17

Plaintiff bears the burden of demonstrating the credit reporting agency's credit report was a causal factor in the denial of her loan. *Cahlin v. Gen. Motors Acceptance Corp.,* 936 F.2d 1151, 1161 (11th Cir. 1991).

The Court finds that Plaintiff has not presented any evidence that Experian was responsible for providing inaccurate information about Plaintiff to Discover, the lender financing Plaintiff's automobile purchase, or to Central Bank. Plaintiff has failed to carry her burden on this issue and therefore summary judgment is granted with regard to these damages.

### C.     Willfulness

Punitive damages are available under the FCRA in cases of willful noncompliance with the statute. 15 U.S.C. § 1681n. Plaintiff can demonstrate a willful violation if she proves Experian knew it was violating the FCRA or that it acted "in reckless disregard of [its] statutory duty." *Safeco Ins. Co.*, 551 U.S. 47. A credit reporting agency "does not act in reckless disregard of [the FCRA] unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. To find a willful violation, the actions of the credit reporting agency must be "objectively unreasonable" under the text of the FCRA. *Id.* at 70.

Plaintiff contends Experian's "flawed" dispute system evidences Experian's willful violation of the FCRA [Doc. # 81, p. 53]. Plaintiff rests her allegation in part on the fact

18

that Experian ignored the errors in Plaintiff's credit file even while Experian was receiving notifications of her disputes with Trans Union and Equifax. She also claims that the automated system used by Experian to respond to identified problems did not have the capability to address mixed file problems even when there was obvious evidence that a mixed file was the source of the mistakes being identified.

The Court concludes that Plaintiff's evidence makes a submissible case on willfulness given the fact that Experian had actual notice on more than one occasion of numerous problems in the Plaintiff's file that were consistent with a mixed file and yet took no action to determine whether Plaintiff's information was mixed with another person's information. As a result, the Plaintiff's file continued to be mixed until after a law suit was filed at which point the corrections were easily made. By relying on its automated system that did not have the capability of sending an alert when such obvious evidence of a mixed file was present, Experian could be found by a reasonable juror to have been reckless. *See, Saenz v. Trans Union, LLC*, 621 F. Supp 2d 1074 (D. Or. 2007); *Fahey*, 571 F. Supp . 2d 1082; *Tilley v. Global Payments, Inc.*, 603 F. Supp. 2d 1314 (D. Kan. 2009); *Compare, Dowell v. Wells Fargo Bank,* 517 F. 3d 1024 (8th Cir. 2008) (No evidence of willfulness even though incorrect information remained in the file where consumer reported wrong account numbers to company and defendant gave the consumer an opportunity to place comments on a written report but consumer failed to do so.)

Summary judgment on Plaintiff's Section 1681n claim is denied.

## IV. Conclusion

Accordingly, it is hereby ORDERED that Experian's Motion for Summary Judgment [Doc. # 67] is GRANTED on Plaintiff's claim for damages resulting from Plaintiff's attempts to notify Experian of her disputes through the four misaddressed letters. Experian's motion is also granted with regard to the 2005 Discover card denial, the 2008 home equity loan, the 2007 Writ of Sequestration and subsequent identity theft by Brenda Faye Campbell, Plaintiff's lost credit opportunities, and out of pocket costs and lost time.

Summary judgment is DENIED in all other respects.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: November 13, 2009
Jefferson City, Missouri