IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

CARISA FAIR, individually and on
behalf of the Estate of SHANNON LYNN FAIR              PLAINTIFFS

VS.                NO. 2001-3016

JOE TAYLOR and LEO JOURNAGAN                           DEFENDANTS
CONSTRUCTION COMPANY, INC

LEO JOURNAGAN CONSTRUCTION                THIRD-PARTY PLAINTIFF
COMPANY, INC

VS.

TIME STRIPING, INC                        THIRD PARTY DEFENDANT

LIBERTY MUTUAL INSURANCE COMPANY          INTERVENOR

## AFFIDAVIT OF DR. GARY R. ALBRECHT, Ph.D

STATE OF _North Carolina_ )
COUNTY OF _Forsyth_ )

Gary R. Albrecht, Ph.D., being first duly sworn on oath, hereby deposes and says:

1. My name is Gary R. Albrecht, Ph.D. I submit this affidavit in support of Plaintiff's Response to Defendant's Motion in Limine regarding hedonic damages. I have agreed to submit this affidavit to help the court understand the concept and applicability of hedonic damages in personal injury litigation.

2. I received my Bachelors Degree in Economics and Philosophy from Tulane University in 1974. I received my Master's Degree in Economics from Indiana University in 1978 and my Ph.D. in Economics from Indiana University in 1986. I am currently a consulting economist and adjunct associate professor at Wake Forest University in Winston-Salem, North Carolina. I have done a substantial amount of research on econometric modeling of state economic models in both Kansas and Indiana. I am currently active as a forensic economist and publish regularly in the field of forensic economics. Attached to this affidavit is a copy of my full curriculum vitae.

3. There is a consensus, although not unanimity, in the field of forensic economics that we can derive values for statistically average lives based on the scientific studies of the value of life reflected in "willingness to pay" literature. Like many other economists, I believe lost enjoyment of life damages in personal injury cases and wrongful death cases, including valuation of lost society and companionship, can be calculated with a reasonable degree of economic certainty.

4. Hedonic calculations simply capture the value of lost enjoyment of life of a statistically average person as established by market analysis. Such analysis provides general statistics not substantially different from life expectancy tables, unemployment rates, projected work-life tables or estimated future net discount rates. Use of statistical averages to calculate damages is a basic tool of forensic economics. As with all economic calculations, calculation of the lost value of life is subject to some theoretical attack.

5. Many estimations and calculations by economists cannot be replicated or validated like those in physical science areas, such as chemistry or medicine. By its nature, all economic analysis includes a human component subject to significant variability. For example, there is no retrospective test that would show that but for the injury suffered any particular injured child would have accomplished any specific level of education. Nonetheless, I know that economists are frequently asked to make assumptions regarding education to provide juries a basis for determining appropriate damage awards for injured children. Assumptions of this type and magnitude are regularly included in the calculations economists testify to in courtrooms.

6. I am familiar with the criticism that the willingness to pay studies do not incorporate peoples' lack of absolute freedom to choose jobs and that other motivations impact the amounts people accept for risky jobs. It is undoubtedly true that each statistical study in the willingness to pay area reflects the knowledge and limitations of the people involved in those studies. Recognizing that fact for each study does not

EXHIBIT 21

invalidate the information provided to economists by the body of studies. Economists can and have evaluated the numerous studies of willingness to pay to determine way [illegible initials] variances exists. For example, I am familiar with the article in *The Journal of Forensic Economics* in 1991, entitled "The Plausible Range of Value of Life - Red Herrings Among the Mackerel" by Ted R. Miller, Senior Research Economist at the Urban Institute in 1991. This article is a good example of an economist evaluating and adjusting studies to compensate for variables within those studies. Based on my knowledge of econometrics and statistics, I believe the Miller article is an economically proper analysis. This does not mean it is the only possible analysis. Nonetheless, I am unaware of any peer reviewed economic literature that disputes Miller's methodology.

7. There are [illegible] variables in economic calculations that require economists to select from a wide universe of data before making a calculation. For example, there are innumerable government and industry studies regarding potential interest rates. In some settings testifying economists will simply take an average of some historical data regarding those rates. This methodology is widely accepted in the field. No economists would testify that the interest rate he or she applied using this technique was perfectly accurate to determine a future loss at a particular point in the distant future. The economists could only testify that it was that professional's best estimation based on the empirical data received. Similarly, when projecting the value of a business at some point in the future, an economist may attempt to determine the most appropriate interest rate to apply over a shorter time horizon. Making such selections is always subject to the criticism that the economist is simply eyeballing. This criticism ignores the fact that these economists are making professional judgments based on their knowledge of the economic data theory.

8. I have addressed in the literature why the loss of a portion of the ability to enjoy ones life is incorporated in the market decisions that value the loss of one whole life. Because the calculation in the market is based on the whole loss as opposed to part of the loss, the willingness to pay studies provide a framework for determining lost value of life calculations. The willingness to pay studies evaluate the lost value of life in the marketplace, not in unusual or emotionally charged settings. The attacks on the theory that ignore the inherent valuation processes of the market and refer to the rescues of trapped people or playing Russian Roulette miss the point of the scholarship and knowledge in this area. It is precisely because the market studies reflect day to day behavior that they provide an accurate model.

9. While intellectual differences exist among forensic economists regarding the calculation of hedonic damages, a substantial portion of such economists believe that willingness to pay literature provides an economically accurate basis from which the value society places on a statistically average person or relationship can be calculated. It is important for economists to understand the studies involved to insure the appropriate analysis.

10. I am familiar with the work of economist Stan V. Smith. I have read and reviewed his book *Economic/Hedonic Damages: A Practice Book for Plaintiff and Defense Attorneys*. That book sets forth an economically appropriate method of calculating lost value of life damages that falls well within the range of accepted standards governing how economists conduct their research and reach their conclusions. The conclusions and methodology of Stan Smith's approach more than meets the criteria of good economics.

FURTHER AFFIANT SAITH NOT.

_____
GARY R. ALBRECHT, Ph.D.

SUBSCRIBED AND SWORN to before me this 4 day of ~~February~~ March, 2002.

[Notary Seal: MICHELLE WILLIAMS, NOTARY PUBLIC-NORTH CAROLINA, COUNTY OF FORSYTH]

_____
Notary Public for North Carolina
Residing at [illegible]
Commission Expires Sept. 14, 2004

A3254081.doc

L. Randall Bishop
Jarussi & Bishop
P.O. Box 3353
Billings, MT 59103-3353
Telephone: (406) 245-7555

Attorneys for Plaintiffs

MONTANA THIRTEENTH JUDICIAL DISTRICT COURT, YELLOWSTONE COUNTY

SANDRA FOSTER and JOSEPH FOSTER, individually and as parents and natural guardians of Andrew Foster and Kathryn Foster,

Plaintiffs,

vs.

R.B.M., M.D. and DEACONESS BILLINGS CLINIC,

Defendants.

Cause No. DV 98-837

Judge: Maurice R. Colberg, Jr.

AFFIDAVIT OF
DR. GARY R. ALBRECHT, Ph.D.

Gary R. Albrecht, Ph.D., being first duly sworn on oath, hereby deposes and says:

1. My name is Dr. Gary R. Albrecht, Ph.D., and I have testified by way of affidavit previously regarding the subject of forensic economics and hedonic damages.

2. Attached hereto is a sworn affidavit which I provided in the action entitled Torres v. Gordon Trucking Incorporated, Case No. CIV95-0460 S-MHW, in the United States District Court for the District of Idaho.

3. The attached affidavit is a true and correct copy of my testimony in the Torres matter, and each of the statements set forth therein is true.

FURTHER AFFIANT SAYETH NOT.

DATED this 21 day of January, 2000.

_____
Gary R. Albrecht, Ph.D.

STATE OF NORTH CAROLINA)
                        ) ss.
County of Forsyth        )

Gary R. Albrecht, Ph.D., being first duly sworn, deposes and says:

That he is the person named in the above-entitled action; that he has read the foregoing affidavit and knows the contents thereof; and that the matters and things therein stated are true of his own knowledge.

_____
Gary R. Albrecht, Ph.D.

Subscribed and sworn to before me this 21 day of January, 2000.

_____
Notary Public for State of North Carolina
Residing at Thomasville, North Carolina
My commission expires: Sept 14, 2004

OFFICIAL SEAL
DANYEL HATCHER
NOTARY PUBLIC-NORTH CAROLINA
COUNTY OF DAVIDSON
My Commission Expires September 14, 2004

2

B. Newal Squyres
Kurt D. Holzer
HOLLAND & HART LLP
Suite 1400, West One Plaza
Post Office Box 2527
Boise, Idaho 83701
Telephone: (208) 342-5000

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAVIER C. TORRES and CYNTHIA G. TORRES, husband and wife individually, as a marital community, and as parents and heirs of ANDREW A. TORRES, deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>GORDON TRUCKING INCORPORATED, an Oklahoma corporation; ROGER J. JOHNSON, an individual; and EDWIN E. HASKINS, an individual,<br><br>Defendants. | Case No. CIV95-0460 S-MHW<br><br>AFFIDAVIT OF DR. GARY R. ALBRECHT, Ph.D. |

STATE OF NORTH CAROLINA ) ss.
County of Forsyth )

GARY R. ALBRECHT Ph.D., being first duly sworn on oath, hereby deposes and says:

1. My name is Gary R. Albrecht, Ph.D. I submit this affidavit in support of Plaintiffs' Opposition to Defendants' Motion to Exclude Testimony Regarding Hedonic

AFFIDAVIT OF DR. GARY R. ALBRECHT, Ph.D. - 1

---

CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing Affidavit of Dr. Gary R. Albrecht, Ph.D. was duly served on counsel of record at the address listed below by U.S. Mail, postage prepaid, this 25 day of January, 2000.

John J. Russell
Brown Law Firm, P.C.
P.O. Drawer 849
Billings, MT 59103-0849

JARUSSI & BISHOP

BY: _____
L. Randall Bishop

3

Damages. I have agreed to submit this affidavit to help the court understand the concept and applicability of hedonic damages in personal injury litigation.

2. I received my Bachelor's Degree in Economics and Philosophy from Tulane University in 1974. I received my Master' Degree in Economics from Indiana University in 1978 and my Ph.D. in Economics from Indiana University in 1986. I am currently a consulting economist and an adjunct associate professor at Wake Forest University in Winston-Salem North Carolina. I have done a substantial amount of research on econometric modeling of state economic models in both Kansas and Indiana. I am currently active as a forensic economist and publish regularly in the field of forensic economics. Attached to this affidavit is a copy of my full curriculum vitae.

3. There is a consensus, although not unanimity, in the field of forensic economics that we can derive values for statistically average lives based on the scientific studies of the value of life reflected in "willingness to pay" literature. Like many other economists, I believe lost enjoyment of life damages in personal injury cases and wrongful death cases, including valuation of lost society and companionship, can be calculated with a reasonable degree of economic certainty.

4. Hedonic calculations simply capture the value of lost enjoyment of life of a statistically average person as established by market analysis. Such analysis provides general statistics not substantially different from life expectancy tables, unemployment rates, projected work-life tables or estimated future net discount rates. Use of statistical averages to calculate damages is a basic tool of forensic economics. As with all economic calculations, calculation of the lost value of life is subject to some theoretical attack.

5. Many estimations and calculations by economists cannot be replicated or validated like those in physical science areas, such as chemistry or medicine. By its nature, all economic analysis includes a human component subject to significant variability. For example, there is no retrospective test that would show that but for the injury suffered any particular injured child would have accomplished any specific level of education. Nonetheless, I know that economists are frequently asked to make assumptions regarding education to provide juries a basis for determining appropriate damage awards for injured children. Assumptions of this type and magnitude are regularly included in the calculations economists testify to in courtrooms.

6. I am familiar with the criticism that the willingness to pay studies do not incorporate people's lack of absolute freedom to choose jobs and that other motivations impact the amounts people accept for risky jobs. It is undoubtedly true that each statistical study in the willingness to pay area reflects the knowledge and limitations of the people involved in those studies. Recognizing that fact for each study does not invalidate the information provided to economists by the body of studies. Economists can and have evaluated the numerous studies of willingness to pay to determine why variances exist. For example, I am familiar with the article in *The Journal of Forensic Economics* in 1991, entitled "The Plausible Range of Value of Life - Red Herrings Among the Mackerel" by Ted R. Miller, Senior Research Economist at the Urban Institute in 1991. This article is a good example of an economist evaluating and adjusting studies to compensate for variables within those studies. Based on my knowledge of econometrics and statistics, I believe the Miller article is an economically proper analysis. This does not mean it is the only possible analysis. Nonetheless, I am unaware of any peer reviewed economic literature that disputes Miller's methodology.

AFFIDAVIT OF DR. GARY R. ALBRECHT, Ph.D. - 2

AFFIDAVIT OF DR. GARY R. ALBRECHT, Ph.D. - 3

7. There are many variables in economic calculations that require economists to select from a wide universe of data before making a calculation. For example, there are innumerable government and industry studies regarding potential interest rates. In some settings testifying economists will simply take an average of some historical data regarding those rates. This methodology is widely accepted in the field. No economist would testify that the interest rate he or she applied using this technique was perfectly accurate to determine a future loss at a particular point in the distant future. The economist could only testify that it was that professional's best estimation based on the empirical data reviewed. Similarly, when projecting the value of a business at some point in the future, an economist may attempt to determine the most appropriate interest rate to apply over a shorter time horizon. Making such selections is always subject to the criticism that the economist is simply eyeballing. This criticism ignores the fact that these economists are making professional judgments based on their knowledge of the economic data and theory.

8. I have addressed in the literature why the loss of a portion of the ability to enjoy ones life is incorporated in the market decisions that value the loss of one whole life. Because the calculation in the market is based on the whole loss as opposed to part of the loss, the willingness to pay studies provide a framework for determining lost value of life calculations. The willingness to pay studies evaluate the lost value of life in the marketplace, not in unusual or emotionally charged settings. The attacks on the theory that ignore the inherent valuation processes of the market and refer to rescues of trapped people or playing Russian Roulette miss the point of the scholarship and knowledge in this area. It is precisely because the market studies reflect day to day behavior that they provide an accurate model.

AFFIDAVIT OF DR. GARY R. ALBRECHT, Ph.D.- 4

9. While intellectual differences exist among forensic economists regarding the calculation of hedonic damages, a substantial portion of such economists believe the willingness to pay literature provides an economically accurate basis from which the value society places on a statistically average person or relationship can be calculated. It is important for economists to understand the studies involved to insure the appropriate analysis.

10. I am familiar with the work of economist Stan V. Smith. I have read and reviewed his book *Economic/Hedonic Damages: A Practice Book for Plaintiff and Defense Attorneys*. That book sets forth an economically appropriate method of calculating lost value of life damages that falls well within the range of accepted standards governing how economists conduct their research and reach their conclusions. The conclusions and methodology of Stan Smith's approach more than meets the criteria of good economics.

Further your Affiant sayeth naught.

_____
GARY R. ALBRECHT, Ph.D.

SUBSCRIBED AND SWORN TO before me this ___ day of February 1997.

_____
Notary Public for North Carolina
Residing at _____
Commission Expires _____

AFFIDAVIT OF DR. GARY R. ALBRECHT, Ph.D.- 5

# CURRICULUM VITAE

## Gary R. Albrecht, Ph.D.

**MAILING ADDRESSES:**

Post Office Box 15685
Winston-Salem, North Carolina 27113

Telephone: (336) 727-9435
Facsimile: (336) 722-9452

7350 South Tamiami Tr., #206
Sarasota, Florida 34231

Telephone: (941) 346-8529

Electronic Mail: albrechtgr@aol.com

**AREAS OF RESEARCH INTEREST:**

Forensic Economics
Economic Forecasting
Applied Econometrics

**EDUCATION:**

Ph.D., Economics, Indiana University, 1986
M.A., Economics, Indiana University, 1978
B.A., Economics and Philosophy, Tulane University, 1974

**EMPLOYMENT:**

1999- CEO of Society of Litigation Economists, a not-for-profit organization dedicated to insuring high standards in the application of economic principles to valuations. The membership of the Society of Litigation Economists is limited to economists who have demonstrated a high level of expertise in forensic economics.

1988- President of Albrecht Economics, a firm specializing in calculating valuations.

1990-1999
Adjunct Associate Professor, Department of Economics, Wake Forest University

1987-1989
Assistant Professor, Department of Economics, Wake Forest University

1984-1987
Director of Econometric Modeling and Research Scientist, Institute for Public Policy and Business Research, University of Kansas, Lawrence, Kansas. Main responsibility was the design and development of an econometric forecasting model for the state of Kansas. Other responsibilities included supervising impact studies, writing quarterly outlook monographs for publication in the *Kansas Business Review*, and, serving on the editorial board for the *Review*.

1978-1984
Research Associate, Division of Research, School of Business, Indiana University, Bloomington, Indiana. Responsibilities included the development of and forecasting with state and sub-state econometric models, and, assistance in the generation of forecasts with a national econometric model.

1980-1981
Lecturer, School of Business, Indiana University, Bloomington, Indiana.

1976-1978
Associate Instructor, Department of Economics, Indiana University, Bloomington, Indiana.

## COURSES TAUGHT:

Econometrics
Economic Forecasting
Introductory Economics
Regional Economics
Statistics
Microeconomics

## PUBLICATIONS:

"It's About Time: The Forensic Economic Evaluation," (with Kurt V. Krueger and John O. Ward) *Journal of Forensic Economics*, Vol. XI, No. 3, Fall 1998, pp. 203-213.

"Risk and Damage Awards: Short-Term Bonds Vs. Long-Term Bonds," *Journal of Legal Economics*, Vol. 7, No.1, Spring/Summer 1997, pp. 48-54.

"The Need to Use Risk-Free Discount Rates," *Journal of Legal Economics*, Vol. 7, No.1, Spring/Summer 1997, pp. 92-95.

"Economic Valuation of Life: A Cumulative Approach," in *The New Hedonics Primer for Economists and Attorneys*, 2nd Edition, John O. Ward, ed., Tucson, Arizona; Lawyers & Judges Publishing Co. 1996, pp. 171-175.

*Journal of Forensic Economics*, Volume VII, No. 3, Gary R. Albrecht, editor. Includes "Modeling Taxes in Personal Injury and Wrongful Death Award Calculations," pp. 1-4.

"The Application of the Hedonic Damages Concept to Wrongful Death and Personal Injury Litigation," *Journal of Forensic Economics*, Volume VII, No. 2, Spring/Summer 1994, pp. 143-150.

"Compensatory Damages and the Appropriate Discount Rate: Comment," *Journal of Forensic Economics*, Volume VI, No. 3, Fall 1993, pp. 271-272.

"The Role of Productivity and Prices in Forecasting Wage Rates," (with Kurt V. Krueger) *Journal of Forensic Economics*, Volume V, No. 3, Fall 1992, pp. 187-195.

"Issues Affecting the Calculated Value of Life," *Journal of Forensic Economics*, Volume V, No. 2, Spring/Summer 1992, pp. 97-104, and in *A Hedonics Primer for Economists and Attorneys*, John O. Ward, ed., Tucson, Arizona; Lawyers & Judges Publishing Co. 1992, pp. 197-205.

"Calculating the Value of a Closely Held Firm," *Journal of Legal Economics*, Volume 1, No. 3, December 1991, pp. 1-4.

"Calculating the Lost Pleasure of Life Due to Injury," *TrialBriefs*. Volume 23, No. 3, Third Quarter, 1991, pp. 16-17.

"Forecasting the Earnings of a Partially Disabled Individual," *Journal of Legal Economics*, Volume 1, No. 2, July 1991, pp. 50-57.

"The Valuation of a Closely Held Firm," *Trial Briefs*, Volume 22, No. 4, Fourth Quarter, 1990, pp. 37-39.

Case 2:08-cv-04217-NKL   Document 188-2   Filed 12/01/09   Page 8 of 9

"The Valuation of a Closely Held Firm: Comment," *Journal of Forensic Economics*, Volume 3, No. 1, December, 1989, pp. 65-68.

"On the Derivation and Consistent Use of Growth and Discount Rates for Future Earnings," (with John C. Moorhouse), *Journal of Forensic Economics*, Volume 2, No. 3, August, 1989, pp. 95-102.

"The Kansas Economy," (with Anthony Redwood), in H. Flentje ed., *Kansas Policy Choices*, Lawrence, Kansas: University of Kansas Press, 1986.

"An Economic Perspective of Rate Suppression Legislation," (with Douglas Houston and Anthony Redwood), *Kansas Law Review*, Volume 33, No. 3, 1985.

"Kansas Exports and Economic Development," (with Shirley Sicilian and Kurt Krueger), *Kansas Business Review*, Fall, 1985.

"The Kansas Econometric Forecasting Model," *Kansas Business Review*, Fall, 1985.

"Long-Term Structural Changes in the Kansas Economy," (with Anthony Redwood and Daniel Petree), *Kansas Business Review*, Winter, 1984-1985.

"An Introduction to the Econometric Model of Indiana," (with R. L. Pfister), *Indiana Business Review*, February, 1981.

"Testing for Causality in Regional Econometric Models," (with R. Jeffery Green), *International Regional Science Review*, Winter, 1979.

## ACADEMIC PAPER PRESENTATIONS:

"The Objective Science of Forensic Economics," presented at the Sixty-Eighth Annual Western Economic Association Conference, Lake Tahoe, June 22, 1993.

"Proof that Saving with Short-Term Bonds Minimizes Purchasing Power Fluctuation Risk," presented at the American Economic Association Conference, New Orleans, January 4, 1992.

"Income Taxes and Economic Loss Calculations," (with Kurt V. Krueger) presented at the Sixty-Sixth Annual Western Economic Association Conference, Seattle, June 30, 1991.

"The Adequacy of Proxy Variables in Forecasting Wage Rates," presented at the Sixty-Fifth Annual Western Economic Association Conference, San Diego, June 30, 1990.

"A Short-Run Employment Function When Adjustment Costs are Linear," presented at the Sixty-First Annual Western Economic Association Conference, San Francisco, July, 1986.

"Choosing Among Forecasted National Variables for Use as Inputs Into Regional Forecasting Models," (with R. Jeffery Green), presented at the Twenty-Seventh Annual Mountain-Plains Economic Conference, 1985.

## WORKING PAPER:

"The Kansas Econometric Model," Institute for Public Policy and Business Research, The University of Kansas, July, 1987.

## AFFILIATIONS:

American Academy of Economic and Financial Experts
American Arbitrators Association - Panel Member
American Economic Association
National Association of Forensic Economics

## REFERENCES:

John C. Moorhouse, Professor
John H. Wood, R. J. Reynolds Professor
Department of Economics
Wake Forest University
Winston-Salem, NC 27109

John O. Ward, Managing Editor
*Journal of Forensic Economics*
& Chairman
Department of Economics
University of Missouri - Kansas City
Post Office Box 30067
Kansas City, MO 64112
(816) 235-2833

5